UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 1:23-cr-00178 (TJK) |
| | : | |
| DARNELL SAVOY, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this sentencing memorandum to assist the Court's consideration of sentencing in this case. Following defendant Darnell Savoy's plea of guilty to one violation of 18 U.S.C. § 924(c)(1)(A)(i) Using, Carrying and Possessing a Firearm in Furtherance of a Drug Trafficking Offense (Count 4), the defendant now faces a guideline sentence of 60 months of imprisonment, up to five years of supervised release, and a fine of up to $250,000. For the reasons set forth below, the Government respectfully recommends that the Court impose a sentence of 60 months of imprisonment followed by a five-year term of supervised release.

### PROCEDURAL HISTORY

The defendant was initially arrested on October 21, 2022, in D.C. Superior Court Case No. 2022 CF2 06297. The defendant was indicted on the instant offense on May 18, 2023 and a superseding indictment was issued on February 14, 2024. On May 24, 2024, the defendant pleaded guilty to Count 4 pursuant to a plea agreement.

## ANALYSIS

**I.     The Offense Conduct**

On October 11, 2022, the Defendant was on release for Assault with Intent to Kill While Armed and other related offenses in D.C. Superior Court case number 2019-CF1-003259 in connection with the near murder of an innocent 14-year-old child, D.O. Nevertheless, he stabbed Victim M.J. during an argument and fled the scene. M.J.'s injuries required several stitches. Over the next several days, investigators sought to determine where the Defendant was staying. The Defendant's ankle monitor showed that he had stayed overnight in the 3900 block of Southern Avenue SE, Washington, D.C., for six nights between October 11 and October 19, 2022. Investigators surveilled this block and ultimately determined that the Defendant had been staying at 3924 Southern Avenue SE, Unit 301, and that evidence of the offense might be located there.

*Execution of Search Warrant*

Based upon the Defendant's assault of M.J., a D.C. Superior Court judge issued a warrant for the Defendant's arrest and a search warrant for 3924 Southern Avenue SE, Unit 301, on October 20, 2022. The next day, on October 21, 2022, members of the Metropolitan Police Department's Violence Reduction Unit and the Federal Bureau of Investigation ("FBI") executed the search warrant at 6:24 a.m. Inside the residence were Shantise Smith, the Defendant, and Smith's three-year old son A.C.

For ease of reference, the following is a diagram of the two-bedroom apartment's layout:



During the search, officers found a plastic bag containing approximately 4.55 grams of an off-white powder substance that was next to a blue camouflage Bass Pro Shop jacket in the living room area. This bag also contained a digital scale with white powder residue, a red cut straw with white powder residue, a two-pack of naloxone nasal spray ("Narcan"[1]), and a small zip baggy with white powder residue. The off-white powder substance and the digital scale residue yielded a positive color reaction for the presence of fentanyl.

The blue camouflage Bass Pro Shop jacket contained twenty-seven assorted zip baggies with an off-white powder substance weighing approximately 7.3 grams (net weight), twenty-nine blue pills stamped "M30," sixteen red zip baggies containing an off-white powder substance weighing approximately 4.98 grams (net weight), and $473 in United States currency. A portion of the off-white powder substance was tested and yielded a positive color reaction for the presence of fentanyl.

---

[1] Narcan nasal spray is used for the emergency treatment of an overdose of a known or suspected opioid, such as fentanyl.





Officers had previously seen the Defendant wearing this blue camouflage Bass Pro Shop jacket. Specifically, on October 18, 2022, *i.e.*, three days before the execution of the search warrant, an officer observed the Defendant wearing the same blue camouflage jacket while leaving the location of the search warrant – 3924 Southern Avenue SE. Moreover, officers

4

observed the Defendant change out of this jacket, and then engage in apparent hand-to-hand drug transactions.



Additionally, while executing the search warrant, officers looked inside the jacket's pockets and found a pair of AirPods and a wallet containing the Defendant's driver's license, Costco membership card, Visa card, and Capitol Access card, further demonstrating indicia of ownership.



Officers also located a plastic glove inside the breast pocket of the blue jacket. While searching a trash can in the kitchen, officers found a pair of plastic gloves inside a bag with white powder residue.

During the search of a hall closet, officers discovered a Glock 30, semi-automatic firearm, bearing serial number BVEG130, on top of a dryer.





This firearm was loaded with one round in the chamber and twenty-three rounds in a twenty-four round capacity magazine. The firearm was unregistered, and the Defendant, of course, lacked the requisite license to carry a firearm in the District.



The seized narcotics were sent to the United States Drug Enforcement Administration's ("DEA") laboratory for drug testing and tested positive for the presence of Fentanyl. Additionally, DNA results linked the defendant to both the firearm and the recovered Fentanyl.

## II.     Legal Background

Though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated."). Moreover, the Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007); *Dorcely*, 454 F.3d at 376

(noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. *United States v. Flores*, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, Commentary, Background.

### III. Defendant's Sentencing Guidelines Calculation

#### A. Defendant's Criminal History Category

The Government agrees with Probation that the defendant's criminal history score is four, which translates to Criminal History Category II (PSR ¶¶ 31-43).

#### B. Total Offense Level

The Government also agrees with Probation's assessment that Count Four has a mandatory statutory minimum of 60 months imprisonment and therefore, this is the Estimated Guidelines range. (PSR ¶¶ 80).

**IV.     Sentencing Recommendation**

Pursuant to the Plea Agreement, the Government respectfully submits that the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a) support a Guideline sentence in this case of 60 months of imprisonment for Count 4. The Government further recommends that the Court impose a five-year term of supervised release to support and supervise the defendant's reentry following his term of imprisonment. The Government does not recommend that a fine be imposed.

**A.     The Nature and Circumstances of the Offense**

The defendant's conduct in this case—illegally possessing a firearm with a large capacity magazine as well as a distribution-level of fentanyl presented a very clear and serious danger to the community. Moreover, the fentanyl the defendant possessed was left in an area of an apartment that was accessible to a small child who resided in that residence.

The applicable Sentencing Guidelines account for the defendant's status as a prohibited person who was in the possession of a firearm in furtherance of a drug trafficking offense, which plainly presents a grave danger to the safety of the community.  The Sentencing Guidelines do not account for the fact that the defendant was on release for two counts of Assault with Attempt to Kill in D.C. Superior Court in case 2019-CF1-003259 at the time of this offense.  However, as part of this plea agreement, the defendant has accepted responsibility in that case and will be sentenced accordingly in D.C. Superior Court on August 30, 2024.  That sentence is to be imposed consecutively to this sentence.

### B. The History and Characteristics of the Defendant

The defendant's criminal history includes two prior convictions as well as a guilty plea to D.C. Superior Court case 2019-CF1-003259. (PSR ¶¶ 26-41.) As such, despite his young age, this instance is not the first time the defendant has run afoul of the law.

### C. The Need for the Sentence Imposed

The recommended sentence is appropriate in order to reflect the seriousness of Mr. Savoy's offenses in this case, to promote respect for the law and prohibition of illegal firearms and narcotics in the community, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). The recommended sentence would also serve to protect the public from additional crimes by Mr. Savoy while he is punished and rehabilitated, as well as serve to provide adequate deterrence from Mr. Savoy committing other offenses going forward. *Id.* § 3553(a)(2)(B)-(C). Moreover, the recommended sentence would support general deterrence for others who may consider unlawfully possessing narcotics and firearms, which are particularly dangerous weapons that pose great harm to others in this District. *Id.* § 3553(a)(2)(B).

The Government also recommends that the defendant be sentenced to five years of supervised release following his release from the term of imprisonment in this case. The Government believes that a five-year term of supervised release after imprisonment would provide necessary support, supervision, and opportunity for the defendant reentry and rehabilitation. Due to the defendant's repeated offenses, and the fact that he was on release in D.C. Superior Court case 2019-CF1-003259 at the time he committed the instant offense, a shorter term of supervision is not appropriate in this case.

V. **The Government's Sentencing Recommendation**

For the reasons described above, the Government respectfully recommends that the Court impose a Guideline sentence of 60 months of imprisonment for Count 4, to be followed by five years of supervised release. A significant period of imprisonment is required and warranted in this case based on the defendant's repeated and dangerous conduct. In addition, this conviction and sentence should finally serve to deter the defendant from additional crimes in the future and also serve to generally deter other persons from committing similar offenses in the community.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney


By:   */s/ Alicia M. Long*
ALICIA M. LONG
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
202-252-7063
alicia.long@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing to be served upon counsel of record via the Electronic Case Filing (ECF) system on July 31, 2024.

                By:    */s/ Alicia M. Long*
                         Alicia M. Long
                         Assistant United States Attorney